* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the parties on July 30, 2003.
3. AmComp is the carrier on the risk.
4. Plaintiff had an average weekly wage of $342.26, which yields a compensation rate of $228.18 per week.
5. The issues before the Full Commission are whether plaintiff sustained an injury by accident arising out of and in the course of her employment on July 30, 2003; what type of compensation, if any, plaintiff is entitled to receive for her alleged injury by accident; whether plaintiff is entitled to a reasonable attorney's fee pursuant to N.C. Gen. Stat. § 97-88.1 and Rule 803 of the North Carolina Workers' Compensation Act; whether plaintiff's termination on September 11, 2003 precludes her from receiving benefits before her December 15, 2003 surgery; and whether defendant-employer accommodated plaintiff's restrictions after her surgery on December 15, 2003.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing, plaintiff was 62 years old and lived in Carolina Shores, North Carolina. Plaintiff had a history of secretarial type work, and was hired by defendant-employer in May 2000 as a guest service representative, back-up operator and reservationist. Plaintiff's job duties included checking clients in and out, as well as bill presentation and receipt of payment.
2. On July 30, 2003, plaintiff was leaving the building on a smoke break when she descended a set of stairs at defendant-employer's premises. As plaintiff was turning left to descend the rest of the stairs, she felt her knee twist and experienced sharp pain. Through her testimony, plaintiff failed to describe any type of accident that precipitated her knee pain. Plaintiff did not testify to any type of unusual event. After the injury, plaintiff continued working the rest of her shift, which included sitting on a banker's stool or standing as necessary. The banker's stool was available to plaintiff as part of her regular job at defendant-employer and was not offered to her as a job modification.
3. On July 31, 2003, plaintiff saw Dr. Richard Young at Seaside Orthopaedics, who took her out of work for three days. Plaintiff stayed out of work for those three days and then returned to work at her regular job for two days before taking a week of vacation that was previously scheduled. After the vacation, plaintiff continued to work in her regular job until her termination on September 17, 2003.
4. Plaintiff had several incidents of poor work quality and mistakes that resulted in her termination on September 17, 2003. Plaintiff's termination was not related to her alleged injury by accident or her work restrictions.
5. Plaintiff admitted that an incident occurred on February 21, 2003, where she made a significant mistake that took defendant-employer a long time to figure out and correct. At that time, plaintiff was placed on probation by defendant-employer.
6. On September 11, 2003, plaintiff received another written warning for a September 8, 2003 incident involving an accounting report. At that time, plaintiff was told that further disciplinary actions would result in her termination.
7. On September 14, 2003, a note from the night auditor illustrated more problems caused by plaintiff and her accounting insufficiencies.
8. Between February 21, 2003 and September 8, 2003, plaintiff admitted that she had been verbally reprimanded on several occasions for not taking her time in performing her job duties.
9. On September 18, 2003, plaintiff was written up for a final time due to a September 17, 2003 accounting report problem, wherein plaintiff's report was again out of balance and plaintiff failed to report the problem to anyone. On that date, plaintiff was terminated.
10. Jackie Gibson, Personnel Director for defendant-employer, testified that any other employee would have been terminated for the same conduct and errors for which plaintiff was terminated. Ms. Gibson testified that plaintiff's job was light duty by nature and that plaintiff could sit or stand as needed. Plaintiff would also have been able to change positions frequently, and, according to Ms. Gibson, defendant-employer would have been able to accommodate light duty restrictions if those were given to plaintiff.
11. Plaintiff testified that while she continued to work after July 30, 2003, she had no problems performing the physical parts of her job.
12. Plaintiff had arthroscopic surgery on her right knee on December 25, 2003 and a total knee replacement on July 26, 2004.
13. Dr. Young testified that he expected plaintiff to be out of work for six weeks after the total knee replacement and then to be placed on light duty restrictions for another six weeks. Dr. Young testified that plaintiff would have been given permanent restrictions of limited squatting as well as having 10 minute breaks from sitting or standing every three hours.
14. Plaintiff stated that she was doing well after the total knee replacement. Due to the light duty nature of plaintiff's job, defendant-employer would have been able to accommodate any light duty restrictions given to plaintiff by Dr. Young. Plaintiff would have only been required to be out of work for six weeks after the total knee replacement. At all other times plaintiff was employable, given her light duty restrictions.
15. Plaintiff was terminated for reasons unrelated to her workers' compensation claim, and plaintiff has failed to prove that she was unable to work due to her injuries, except for the six-week period of time after her total knee replacement.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, plaintiff must prove the injury is the result of an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6); Henry v. A.C. Lawrence Leather Co.,231 N.C. 477, 57 S.E.2d 760 (1950).
2. An injury must involve more than the carrying on of the usual and customary duties in the usual way to justify an award of compensation. Davis v. Raleigh Rental Center,58 N.C.App. 113, 292 S.E.2d 763 (1982). An injury that occurs under normal working conditions is not considered an accident. Poe v. AcmeBldrs., 69 N.C.App. 147, 316 S.E.2d 338, cert. denied,311 N.C. 762, 321 S.E.2d 143 (1984). In this case, plaintiff's injury occurred under normal working conditions and involved the carrying on of the usual and customary duties in the usual way. There is no evidence that anything unusual happened to cause plaintiff's knee to twist as she was walking down a flight of stairs. Plaintiff did not stumble, trip, slip or fall. Thus, plaintiff did not sustain an injury by accident or specific traumatic incident arising out of and in the course of her employment with defendant-employer on July 30, 2003. N.C. Gen. Stat. § 97-2(6); Anderson v. Motor Co., 233 N.C. 372,64 S.E.2d 265 (1951).
3. Therefore, plaintiff is not entitled to benefits under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2et seq.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for compensation and medical benefits is hereby DENIED.
2. Each party shall pay its own costs. Defendants shall pay an expert witness fee of $410.00 to Dr. Young, if not already paid.
This 1st day of March 2006.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_____________ THOMAS J. BOLCH COMMISSIONER